UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In Re:

ALEXANDER J. FERNANDEZ,

    Debtor,
_____/

Bk. No. 8:19-bk-4251-MGW
8:19-ap-396-MGW

INTERNAL REVENUE SERVICE,

    Appellant,
v.

CASE NO. 8:22-cv-2312-SDM

ALEXANDER J. FERNANDEZ,

    Appellee.
_____/

## ORDER

    Alexander Fernandez initiated an adversary proceeding to determine if an exception from discharge applied to his tax debt. After a two-day trial, the bankruptcy judge entered a lengthy, detailed, and meticulous fifty-four page order and found that no exception prevents the discharge of Fernandez's tax debt. The IRS appeals and argues that because Fernandez willfully attempted to evade or defeat his tax, an order should reverse the judgment.

### BACKGROUND

    From September 2008 to 2015, Alexander Fernandez practiced radiology in a private practice and earned an average of $400,000 per year. (Doc. 4-81 at 3) Fernandez's private-practice employers hired Fernandez as an independent contractor,

which required Fernandez to pay for his business expenses and required Fernandez every quarter to pay an estimated tax. (Doc. 4-81 at 4)  In each job before his job as a private radiologist, Fernandez worked as an employee (rather than as an independent contractor), and Fernandez's employers withheld taxes from his paycheck. (Doc. 4-81 at 3-4)  Fernandez's earlier jobs as an employee contributed to Fernandez's ignorance of his duty as an independent contractor to pay quarterly estimated tax. (Doc. 4-81 at 4)  Also, Fernandez failed to understand the increase in tax rate that resulted from Fernandez's employment in private practice. (Doc. 4-81 at 4)

In October 2010, Fernandez consulted with a tax expert, who advised Fernandez of his responsibility to pay quarterly estimated tax and advised Fernandez that he had incurred a large tax liability because of his earlier failure to pay. (Doc. 4-81 at 5)  After Fernandez belatedly filed a tax return for 2009 and for 2010, Fernandez learned that he owed "$57,019 for 2009 and $104,195 for 2010." (Doc. 4-81 at 5)

Fernandez hired a tax attorney, who advised Fernandez to timely pay each future quarterly tax estimate but to do nothing with the past-due tax until the IRS bills Fernandez. (Doc. 4-81 at 5)  Following this advice, Fernandez paid $14,462 in estimated tax for 2010 and paid $53,126 in estimated tax for 2011. (Doc. 4-81 at 6)  The tax attorney informed Fernandez that the tax attorney would arrange with the IRS an installment agreement, but the tax attorney failed to do so by August 2012. (Doc. 4-81 at 6)  Fernandez decided to directly contact the IRS. The IRS accepted Fernandez's offer to pay $3,000 per month under an installment agreement, to which Fernandez complied until 2014. (Doc. 4-81 at 6)

About the time Fernandez entered the installment agreement, his wife filed for divorce. (Doc. 4-81 at 7) The divorce cost Fernandez legal fees, household expenses for his wife and children, and up to $13,000 per month in alimony and child support. (Doc. 4-81 at 7) Also, in 2014 Fernandez's income decreased by at least twenty-five percent. (Doc. 4-81 at 7) The divorce and the loss in income caused Fernandez to default on the installment agreement. (Doc. 4-81 at 7)

The installment agreement failed to reduce Fernandez's tax obligation. (Doc. 4-81 at 7) Although he complied for two years with the installment agreement, Fernandez in those two years underpaid his quarterly estimated tax, which resulted in an obligation of $125,443 for 2013 and $54,570 for 2014. (Doc. 4-81 at 7-8)

In June 2015, Fernandez hired the same tax attorney, who recommended an initial offer-in-comprise of $10,000 to start a negotiation with the IRS. (Doc. 4-81 at 8) The tax attorney recommended that Fernandez complete each required form and supply to the attorney certain documents, and the tax attorney agreed to submit the offer-in-compromise. (Doc. 4-81 at 8) Fernandez alleges that by August 2015 he sent each required document to the attorney, who told Fernandez that the offer-in-compromise process might continue for more than a year. (Doc. 4-81 at 9)

The attorney did not submit the offer until May 2017. (Doc. 4-81 at 9) Before the attorney could submit the offer, the attorney needed more information from Fernandez. (Doc. 4-81 at 9) In December 2016, the attorney drafted a letter requesting more information, but the attorney mailed the letter to Fernandez's old address. (Doc. 4-81 at 9) After the attorney successfully contacted Fernandez and submitted

the $10,000 offer, the IRS denied the offer because the IRS determined "that [Fernandez] could pay his past-due taxes in full." (Doc. 4-81 at 9)

Fernandez appealed the IRS's decision but could not pursue the appeal because Fernandez owed approximately $50,000 in tax for 2017. (Doc. 4-81 at 10-11) The IRS granted Fernandez forty-eight hours to pay his 2017 tax debt. (Doc. 4-81 at 11) Although Fernandez borrowed money from his family, he failed to gather enough money to pay his 2017 debt. (Doc. 4-81 at 11) The IRS denied the appeal. (Doc. 4-81 at 11)

In total, Fernandez owed $530,240 in tax debt accrued from 2009 to 2014. (Doc. 4-81 at 12) During those years, Fernandez "spent substantial sums on housing, cars, food, travel, and personal items." (Doc. 4-81 at 12) From October 2009 to April 2012, Fernandez rented a condominium for $2,000 per month. (Doc. 4-81 at 12) Fernandez moved into a condominium that cost $2,500 per month. (Doc. 4-81 at 12) In September 2014, Fernandez moved to a house that cost $3,000 per month, and Fernandez split rent with his partner. (Doc. 4-81 at 12) Before moving to his current house, Fernandez moved to a house that cost $3,750 per month. (Doc. 4-81 at 12-13) Fernandez's current house costs $4,500 per month and has a hot tub. (Doc. 4-81 at 13)

Before he knew of his tax debt, Fernandez purchased "a used 2006 BMW 650." (Doc. 4-81 at 13) For work, Fernandez traveled in his car often, and because the miles deteriorated the car, Fernandez in 2013 leased a BMW 3 series. (Doc. 4-81 at 13) Fernandez consolidated into the lease the money he owed for the BMW 650.

- 4 -

(Doc. 4-81 at 13)  Upon the lease's expiration, Fernandez paid $12,000 for excess miles and bought a used 2013 BMW 650i Coupe, which he drives currently.  (Doc. 4-81 at 13)  "In 2009, [Fernandez] bought a Volkswagen Jetta for his daughter," and from 2010 to 2014 Fernandez and his first wife jointly owned a Lexus.  (Doc. 4-81 at 14)

In 2014 and 2015, Fernandez routinely spent $1,000 per month on high-end restaurants and nightclubs.  (Doc. 4-81 at 14)  Although some outings supported his business, Fernandez personally dined out "more than usual" in each year.  (Doc. 4-81 at 14)  Fernandez also traveled internationally six times during 2010 to 2018.  (Doc. 4-81 at 14)  On two of the trips, Fernandez travelled to see a dying relative.  (Doc. 4-81 at 15)  These trips cost $54,000, at most.  (Doc. 4-81 at 15)

"Over the years," Fernandez spent over $5,000 on designer goods.  (Doc. 4-81 at 16)  Plus, sometime between 2014 and 2016 Fernandez purchased a $20,000 engagement ring for his second wife.  (Doc. 4-81 at 16)  Fernandez used several credit cards to split the engagement-ring purchase.  (Doc. 4-81 at 17)

In 2019, Fernandez divorced his second wife.  (Doc. 4-81 at 17)  Shortly after, Fernandez hired the same tax attorney to help Fernandez resolve his seemingly insurmountable tax debt.  (Doc. 4-81 at 17)  "On May 6, 2019, Fernandez filed for chapter 7 bankruptcy."  (Doc. 4-81 at 17)  Because at the time of the bankruptcy filing Fernandez owed $330,000 for unpaid tax during 2010 to 2014, Fernandez filed this adversary action and asserted that the judge should discharge Fernandez's tax debt.  (Doc. 4-81 at 18)

## THE BANKRUPTCY JUDGE'S ORDER

The bankruptcy judge determined that no exception under 11 U.S.C. § 523(a)(1)(C) applies to Fernandez's debt, and a separate order discharged the debt. (Doc. 4-81 at 18) According to the order, Section 523(a)(1)(C) "excepts from the chapter 7 discharge any tax debt that the debtor 'willfully attempted in any manner to evade or defeat.'" (Doc. 4-81 at 18)

The order begins by determining whether Fernandez "engaged in evasive conduct." (Doc. 4-81 at 18) Because Fernandez failed to timely file his tax return and failed to pay his taxes, the order concludes that Fernandez "engaged in evasive conduct." (Doc. 4-81 at 21)

The bulk of the order's analysis discusses whether Fernandez acted willfully, which the order defines as a voluntary and intentional violation of the duty to pay income tax. (Doc. 4-81 at 22) Fernandez argued that the absence of any "badges of fraud" shows that the IRS failed to meet the burden to prove willfulness. (Doc. 4-81 at 22) The IRS argued that Fernandez's high discretionary spending shows that Fernandez willfully evaded taxes.

The order describes three Eleventh Circuit decisions that affirm the "nondischargeability" of tax debt because of the debtor's excessive spending. (Doc. 4-81 at 23) According to the order, *In re Feshbach*, 974 F.3d 1320 (11th Cir. 2020), represents the "most egregious" excessive-spending case. (Doc. 4-81 at 23) The order details that in *In re Feshbach* the debtor wanted to "discharge nearly $4 million in tax debt" but spent "$700,000 for travel; $610,000 for hired help and a personal chef; $500,000

for clothing; $370,000 for groceries; $230,000 to rent a house in Aspen, Colorado . . . $120,000 for entertainment; . . . $75,000 for dining out" and "$1 million in 'other' personal expenses and $500,000 in charitable contributions." (Doc. 4-81 at 23-34)

Next, the order describes that in *In re Jacobs*, 490 F.3d 913 (11th Cir. 2007), "the debtor spent $20,000 on plastic surgery for his wife" and paid "$1,000/month for a golf club membership; paid $600 – $700/month for a leased Mercedes-Benz for his wife, even though the couple drove other luxury cars; donated nearly $25,000 to charity; and gave thousands of dollars to his kids." (Doc. 4-81 at 24)

Finally, the order states that in *In re Mitchell*, 633 F.3d 1319 (11th Cir. 2011), the debtor spent $200,000 on a house, which the debtor sold three years later and "bought a new house for $465,000." (Doc. 4-81 at 24) Plus, the debtor paid a "$30,000 personal loan; bought stock . . . bought three time shares, which required nearly $4,000 in down payments . . . invested $100/month during a four-year period; and donated $81,000 to his church." (Doc. 4-81 at 24)

But, according to the order, *In re Feshbach*, *In re Jacobs*, and *In re Mitchell* each prevents the discharge of a debt because the "totality of the circumstances" — excessive spending and "additional evidence" — showed that each debtor willfully evaded the tax. (Doc. 4-81 at 25) For example, the order explains that the debtor in *In re Mitchell* "admitted he deliberately tried to avoid paying." (Doc. 4-81 at 25) Evidence in *In re Jacob* and evidence in *In re Mitchell* showed that the tax debt "was not the result of a mistake." (Doc. 4-81 at 26) In *In re Feshbach* evidence showed that the debtor "exploited the offer-in-compromise process." (Doc. 4-81 at 26) In *In re Jacobs*

- 7 -

and *In re Mitchell*, evidence showed that each debtor "attempted to conceal assets." (Doc. 4-81 at 26)  The order scrupulously explains in the final twenty-six pages that because no evidence shows that Fernandez deliberately spent money for the purpose of avoiding the payment of taxes, because no evidence shows that Fernandez tried to abuse the offer-in-compromise process or tried to conceal assets, because Fernandez's discretionary spending was neither excessive nor lavish, and because Fernandez initially accrued debt due to a mistake, the evidence shows that Fernandez never willfully evaded or attempted to evade payment of his tax.

## DISCUSSION

Generally, bankruptcy law discharges the debts of an "honest but unfortunate" person filing for bankruptcy. *Grogan v. Garner*, 498 U.S. 279, 286-87 (1991).  To ensure no dishonest debtor enjoys the protections of bankruptcy, exceptions to discharge exist.  One exception, under 11 U.S.C. § 523(a)(1)(C), excepts from discharge a tax debt "with respect to which the debtor . . . willfully attempted in any manner to evade or defeat such tax."  Although an "unambiguous" and "straightforward" statute, the Eleventh Circuit has bisected the statute into a "conduct" component and a "mental-state" component. *In re Fretz*, 244 F.3d 1323, 1327 (11th Cir. 2001).  *In re Fretz* defines the "conduct" component as a requirement "that the debtor 'attempted in any manner to evade or defeat [a] tax.'" (alteration in original)  The "mental-state" component requires no "specific intent to evade taxes" but requires that the debtor "acted voluntarily and intentionally in their attempts to evade or defeat the payment of taxes." *In re Feshbach*, 974 F.3d at 1331.  Section 523(a)(1)(C) prevents

- 8 -

discharge for a debtor who fails to pay taxes for the purpose of knowingly and deliberately evading (or attempting to evade) tax liability but allows a discharge for a debtor who fails to pay — even voluminously and thoughtlessly — for some other reason. At trial, the IRS has the burden to prove that Section 523(a)(1)(C) applies.

### I. No clear error appears in the bankruptcy judge's finding of willfulness

The IRS argues that the bankruptcy judge erred in the "application of the standard for willfulness." (Doc. 6 at 14) The IRS states that the bankruptcy judge must examine the "debtor's behavior" and the circumstantial evidence to "draw reasonable inferences" about willfulness. (Doc. 6 at 14) Because "the duration of Dr. Fernandez's noncompliance and his continued discretionary spending . . . are sufficient for the court to infer his willfulness," the facts "compel the conclusion that Dr. Fernandez was willful." (Doc. 6 at 15) Also, the IRS argues that this issue presents a question of law because by "treating the absence of direct evidence of fraudulent intent as indicative that Dr. Fernandez was not willful" the court applied a "heightened [legal] standard." (Doc. 6 at 14)

Despite the IRS's contention, "whether or not a debtor willfully attempted to evade or defeat a tax is a question of fact reviewable for clear error," *In re Jacobs*, 490 F.3d at 921, which exists only if the evidence creates a "definite and firm conviction" that the trial judge's finding is wrong. *Branch v. Secretary, Fla. Dept. of Corrections*, 638 F.3d 1353, 1356 (11th Cir. 2011). The bankruptcy judge concluded that the IRS failed to prove willfulness because the evidence showed that Fernandez's spending "was not necessarily excessive or lavish," because direct evidence showed that a

- 9 -

mistake (not willfulness) caused the debt,* because Fernandez in good faith cooperated with the IRS, and because Fernandez never attempted to conceal assets. (Doc. 4-81 at 53) Ample evidence, which the bankruptcy judge specifically and precisely describes in the order, supports the bankruptcy judge's conclusion, and no clear error appears.

Although the IRS repeatedly states that a "totality of the circumstances" contributes to willfulness, the IRS argues that Fernandez's discretionary spending alone constitutes willfulness. The IRS relies on a quote from *Feshbach v. Dep't of Treasury, Internal Revenue Serv.*, 594 B.R. 495, 500 (M.D. Fla. 2018) (Jung, J.): "discretionary spending can evidence willful intent." The bankruptcy judge correctly identified that no decision in the Eleventh Circuit has relied solely on excessive spending to satisfy the "mental-state" component. The bankruptcy judge affirms in the order that "willfulness can be inferred from high discretionary spending," but, overall, whether Fernandez "willfully attempted to evade his taxes must be determined from a totality of the circumstances." (Doc. 4-81 at 23, 25) From his unique and reliable vantage, the bankruptcy judge credited Fernandez's testimony explaining his purchases. The bankruptcy judge found that the IRS failed to show by a preponderance of the evidence that Fernandez's spending was for the purpose of, and with the willful intent to, avoid paying his taxes.

---

* Although the IRS argues that the bankruptcy judge afforded too much weight to the "lack of direct evidence of willfulness" (Doc. 6 at 14), the bankruptcy judge not only found that no direct evidence shows Fernandez's willfulness, but, "[t]o the contrary," direct evidence shows that Fernandez's "initial failure to pay taxes was the result of a mistake." (Doc. 4-81 at 26 )

## II. Badges of fraud

The IRS argues that the bankruptcy judge "erred in treating the absence of evidence that [Fernandez] concealed assets, an example of a badge of fraud, as an indication that his evasive conduct was not willful." (Doc. 6 at 25) According to the IRS, the absence of any badge of fraud has no effect on willfulness "if other circumstantial evidence shows the debtor's actions were voluntary and intentional." (Doc. 6 at 25). But, again, "other circumstantial evidence," direct evidence, and Fernandez's concealing no assets contributed to the bankruptcy judge's finding. And to the extent that the IRS requests to weigh (again or in the first instance) other evidence of a badge of fraud, a review for clear error prohibits this. *In re Feshbach*, 974 F.3d at 1332.

## III. Fernandez's offer-in-compromise

The IRS argues that the bankruptcy judge clearly erred by finding that Fernandez never abused the offer-in-compromise process. Through the IRS's perspective, the evidence shows that Fernandez purposefully thwarted the "IRS's proposed levy" with a late offer-in-compromise. (Doc. 6 at 28) Despite "two permissible views of the evidence," a review for clear error prohibits reversal if the trial judge's "account of the evidence is plausible in light of the record viewed in its entirety." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564 (1985) Based on evidence in the record, the bankruptcy judge found the following facts. Fernandez lacked sophisticated knowledge of the tax code, and upon his realization that he owed money, Fernandez contacted a tax attorney. (Doc. 4-81 at 47) Despite his hiring of a tax attorney,

Fernandez directly negotiated an installment agreement with the IRS. (Doc. 4-81 at 47) Fernandez, upon defaulting on the installment agreement, hired the tax attorney to propose an offer-in-compromise. (Doc. 4-81 at 48) Fernandez intended, but failed, to propose the offer-in-comprise before the IRS notified Fernandez of the IRS's intent to levy. (Doc. 4-81 at 48) But no bad faith contributed to Ferndandez's failure. (Doc. 4-81 at 48) Fernandez's initial $10,000 offer, although low, stemmed from the tax attorney's advice; with the initial offer, Fernandez intended to commence a negotiation with the IRS. (Doc. 4-81 at 49) For these reasons, the bankruptcy judge concluded that Fernandez operated in good faith. (Doc. 4-81 at 50) The bankruptcy judge's plausible "account of the evidence" confirms that no clear error exists.

## CONCLUSION

For the above reasons, the judgment is **AFFIRMED**. The clerk must enter judgment for the appellee and close the case.

ORDERED in Tampa, Florida, on March 29, 2024.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE